IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES MAY, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 16-821-CFC |
| | ) | |
| CLAIRE DEMATTEIS, Commissioner, | ) | |
| Delaware Department of Corrections, | ) | |
| ROBERT MAY, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

J. Brendan O'Neill, Office of Defense Services for the State of Delaware, Wilmington, Delaware. Attorney for Petitioner.

Kathryn Joy Garrison, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION[2]**

September 9, 2019
Wilmington, Delaware

---

[1]Commissioner Claire DeMatteis and Warden Robert May have replaced former Commissioner Robert M. Coupe and former Warden G.R. Johnson, original parties to the case. *See* Fed. R. Civ. P. 11(d).

[2]This case was re-assigned to the undersigned's docket on September 20, 2018.

/s/ Colm F. Connolly

CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by petitioner James May ("Petitioner"). (D.I. 2) The State filed an Answer in opposition, (D.I. 8), and Petitioner filed a Reply (D.I. 12). For the following reasons, the Court will deny the petition as barred by the one-year limitations period prescribed in 28 U.S.C. § 2244.

I. **BACKGROUND**

On March 8, 2013, pursuant to a consolidated plea agreement, Petitioner pled guilty to drug dealing (cocaine) and aggravated drug dealing (heroin). (D.I. 8 at 1) On that same day, the Superior Court sentenced Petitioner as follows: (1) for drug dealing cocaine, as an habitual offender to nine years of Level V incarceration; and (2) for aggravated drug dealing, ten years of Level V incarceration, suspended for decreasing levels of supervision (D.I. 8 at 2) Petitioner did not file a direct appeal.

On May 6, 2014, Delaware's Office of Defense Services ("OPD") filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion) on Petitioner's behalf, which the Superior Court denied on December 3, 2014. (D.I. 8 at 2) The Delaware Supreme Court affirmed that decision on October 12, 2015. *See Aricidiacono v. State,* 125 A.3d 677 (Del. 2015).

On September 19, 2016, the OPD filed a federal habeas Petition on Petitioner's behalf, asserting the following two grounds for relief: (1) the Delaware Supreme Court unreasonably applied *Brady v. United States*, 397 U.S. 742, 748 (1970) when denying Petitioner's due process argument that his guilty plea was involuntary; and (2) the Delaware Supreme Court made unreasonable findings of fact regarding the misconduct

at the Delaware Office of the Medical Examiner ("OCME"). (D.I. 2; D.I. 7) The State filed an Answer asserting that the Petition should be denied as time-barred or, alternatively, because the claims are meritless. (D.I. 8) Petitioner filed a Reply arguing that (1) the Petition is actually timely filed after applying § 2244(d)(1)(D) and equitable tolling; and (2) the claims warrant relief under § 2254(d)(1) and (2). (D.I. 12)

## A. OCME Criminal Investigation

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

2

## II. ONE-YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and habeas petitions filed in federal courts after this date must comply with the AEDPA's requirements. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The instant Petition, filed in 2016, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh*, 521 U.S. at 336. Petitioner does not allege, and the Court does not discern, any facts triggering the application of § 2244(d)(1)(B) or (C). Petitioner does, however, appear to assert that he is entitled to a later starting date for AEDPA's limitations period – April 15, 2014 – under § 2244(d)(1)(D), because that is the

3

date on which the State began to notify defendants in certain active cases about the OCME evidence problem. (D.I. 12 at 7)

In order to determine if the April 15, 2014 revelation of the OCME misconduct constitutes a newly discovered factual predicate warranting a later starting date for the limitations period under §2244(d)(1)(D), the Court must first distill Petitioner's argument to its core. The argument appears to be two-fold. First, Petitioner contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose that there was ongoing misconduct at the OCME during the time he was considering whether to enter a plea. Second, Petitioner contends that the Delaware state courts should have deemed his guilty plea involuntary under *Brady v. United States*, 397 U.S. 742, 748 (1970) due to the State's failure to disclose the *Brady v. Maryland* evidence, *i.e.*, the OCME misconduct. In short, Petitioner asserts that his lack of knowledge about the OCME misconduct is vital to his habeas claims because that lack of knowledge rendered his guilty plea involuntary and unknowing under *Brady v. United States*.

Under *Brady v. United States*, a guilty plea is considered involuntary if it is "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady*, 397 U.S. at 755. A violation of *Brady v. Maryland* occurs when the government fails to disclose evidence materially favorable to the accused,

4

including both impeachment evidence and exculpatory evidence.[3] *See United States v. Bagley*, 473 U.S. 667, 676 (1985). For purposes of the inquiry under § 2244(d)(1)(D), whether or not the OCME misconduct affected, or could have affected, Petitioner's decision to plead guilty depends on whether the drugs in his case were tested by the OCME and the results were provided to him prior to entering a plea. Therefore, in order to trigger a later starting date under § 2244(d)(1)(D) for this involuntary plea/*Brady v. Maryland* claim, Petitioner must show that (1) the drug evidence in his case was tested by the OCME and he received the results of the test before entering a plea; and (2) exercising due diligence, he could not have learned that the evidence in his case may have been part of the compromised drug evidence involved in the OCME scandal until April 15, 2014.

Petitioner has not met this burden, because he has not satisfied the first prong of the test. Petitioner entered his guilty plea on March 8, 2013, and the OCME report concerning the drugs was not signed (and therefore presumably not presented to Petitioner) until August 19, 2013. (D.I. 8 at 3; D.I. 14-2 at 392) If the OCME test results were not provided until August 19, 2013, then the test results cannot be said to have played a factor in his decision to plead guilty on March 8, 2013. Thus, the Court need not address the second prong of the aforementioned test, and concludes that Petitioner has not established a factual predicate triggering a later starting date for the limitations

---

[3]A petitioner establishes a *Brady v. Maryland* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

period under § 2244(d)(1)(D). Accordingly, the one-year limitations period began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the time period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner on March 8, 2013, and he did not appeal that judgment. Therefore, Petitioner's conviction became final on April 8, 2013.[4] *See* Del. Supr. Ct. R. 6(a)(ii) (establishing a thirty day period for timely filing of notice of appeal). Applying the one-year limitations period to that date, Petitioner had until April 8, 2014 to timely file his Petition. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the triggering event, which is usually the date on which the judgment of conviction became file).

Petitioner did not file the instant § 2254 petition until September 19, 2016, more than two years after the expiration of AEDPA's statute of limitations. Therefore, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled.

---

[4]The appeal period actually expired on Sunday. Therefore, Petitioner had until the end of the day on Monday, April 8, 2013, to file a direct appeal. *See* Del. Sup. Ct. R. 11(a).

*See Holland v. Florida*, 560 U.S. 631, 645 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). The Court will discuss each doctrine in turn.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed application for state collateral review tolls AEDPA's limitations period during the time the application is pending in the state courts, including any post-conviction appeals, provided that the application is filed during AEDPA's one-year limitations period. *Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Here, Petitioner's Rule 61 motion has no statutory tolling effect because it was filed on May 6, 2014, approximately one month after the expiration of AEDPA's limitations period. Thus, the Petition is time-barred, unless equitable tolling is available.

### B. Equitable Tolling

In very rare circumstances, the one-year limitations period may be tolled for equitable reasons when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (emphasis added). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *See id.*; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). A petitioner's obligation to act diligently applies to both his filing of the federal habeas

application and to his filing of state post-conviction applications. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir.2005). In turn, the Third Circuit has explained that equitable tolling of AEDPA's limitations period may be appropriate in the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*See Jones*, 195 F.3d at 159; *Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Petitioner contends that the Court should equitably toll the limitations period and deem his Petition timely filed. He asserts that he was unable to file his Rule 61 motion until May 6, 2014 "through no fault of his own," and it would "be inequitable to prevent him from seeking relief when several similarly situated petitioners will have their claims heard even though they discovered the misconduct at the same time as he did, filed their petitions at the same time or after he did and exhausted their state remedies around the same time as he did." (D.I. 12 at 8) According to Petitioner, it "is unfair to penalize him because his counsel's state resources were significantly strained due to the hundreds of motions they filed upon discovery of the misconduct," and that the interest of justice requires his claim be heard because the claim arises from "systemic government misconduct." (D.I. 12 at 8)

Petitioner's equitable tolling argument is unavailing. The OPD concedes that the office became aware of the underlying OCME investigation on February 21, 2014. (D.I. 17 at 6) On or about April 15, 2014, the OPD was notified about certain drug evidence

8

compromises in active cases. (D.I. 12 at 7) Petitioner raised the issue of the OCME drug evidence scandal in his Rule 61 motion that he filed in the Delaware Superior Court in May 2014, and the Delaware Supreme Court affirmed the denial of the Rule 61 motion on October 12, 2015. These dates demonstrate that Petitioner could have filed a "protective" § 2254 petition[5] in this Court along with a motion to stay the proceeding while awaiting the Delaware state courts' post-conviction decisions. *See Ross v. Varano*, 712 F.3d 784, 804 (3d Cir. 2013)("[F]or a petitioner to obtain relief [via equitable tolling] there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition."). The fact that Petitioner's counsel was filing "hundreds of motions" (presumably in state court) after May 2014 does not demonstrate that Petitioner (or his counsel) was **prevented** from filing a basic habeas petition in this Court around the time Petitioner's Rule 61 motion was filed. Similarly, although a petition filed on or around May 2014 or October 2015 would still have been untimely, Petitioner's act of filing a protective petition around either of those dates would have helped demonstrate reasonable diligence on his part. *See, e.g., Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)(once the extraordinary circumstance ends, the petitioner must exercise reasonable diligence in filing his petition).

---

[5]In *Pace v. DiGuglielmo*, the Supreme Court explained that a "petitioner's reasonable confusion about whether a state filing would be timely" when attempting to exhaust state remedies may constitute good cause for him to file a "protective petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

Finally, to the extent the delayed filing was due to a miscalculation or mistake on the part of the attorney(s) representing Petitioner, "attorney error, miscalculation, inadequate research, or other mistakes" do not amount to extraordinary circumstances for equitable tolling purposes. See Hendricks v. Johnson, 62 F. Supp. 3d 406, 411 (D. Del. 2014). In short, Petitioner cannot demonstrate that the OCME scandal, and/or the timing of the State's disclosure about the OCME scandal, actually prevented him from timely filing a petition seeking federal habeas relief. For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Accordingly, the Court will deny the instant petition as time-barred.[6]

## III.   CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. See 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000). In addition, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial

---

[6] Having concluded that it must deny the Petition as time-barred, the Court will not address the State's alternate reason for denying the Petition.

10

of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition filed pursuant to 28 U.S.C. § 2254 should be denied as time-barred. Reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, the Court will deny as time-barred Petitioner's § 2254 Petition. An evidentiary hearing is not warranted, and an appropriate Order will be entered.